UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | CASE NO. 22-cr-201-OAW |
| ) | |
| MIGUEL RIVERA ) | |
| ) | |
| ) | |
| ) | |
| ) | |

**ORDER DISPOSING OF MOTION TO SUPPRESS (ECF No. 136)**

Defendant Miguel Rivera filed a motion to suppress, ECF No. 136, to which the government responded, ECF No. 139. The court reviewed the parties' motions, and the exhibits attached thereto and hereby **DENIES** the relief requested.

I. **BACKGROUND**

In March of 2021, the Connecticut State Police (CSP) began investigating a drug trafficking organization in Shelton, Connecticut. In June of 2022, a state judge approved a warrant to search three areas of a multi-family residence located at 156 Coram Avenue, Shelton, Connecticut: the second-floor residence (which was occupied by the defendant, his girlfriend Angelic Julian, their child, and Ms. Julian's mother), the third-floor residence (which was occupied by Allister James and Aurelio Rivera), and a multi-car detached garage. *See State Search Warrant Affidavit and Application*, ECF No. 139-1 at 13, 34; *State Search Warrant*, *id.* at 37; *see also Investigative Report* (Gov. Ex. 1), *id.* at 2.

CSP seized a scale with white powder residue from the second-floor kitchen and two rounds of 9mm ammunition from the second-floor porch. *Investigative Report*. They also seized various items from the detached garage and the 1993 Honda Civic Del Sol

1

located within it. *Id.* Those items include: a ski mask; a gun case labeled; containing a Krieghoff K80 12-gauge shotgun bearing serial number 114395; a backpack containing empty magazines and ammunition, including approximately 50 rounds of Federal shotgun ammunition; a bag containing empty magazines and a bag of ammunition; a pelican case containing a firearm accessory; documents in Miguel Rivera's name (such as an eye doctor receipt); a range bag containing multiple firearm accessories; a duffel bag containing firearm accessories; a rifle scope; an empty, high-capacity magazine capable of holding 24 rounds of .45 caliber ammunition; a 50-round drum magazine containing approximately 24 rounds of 9mm ammunition; and two Kevlar ballistic vests. *Id.*

The shotgun, the backpack containing the shotgun ammunition, and the firearm accessories recovered from the Honda were reported stolen from a New Canaan motor vehicle burglary dating back to December 2020. *Id.*

CSP did not arrest the defendant on June 21, 2022. *Report RE: Execution of Search Warrant as to Third Floor*, Gov. Ex. 3. But CSP arrested Allister James and Aurelio Rivera, the third-floor residents, as a result of the seizure of narcotics, narcotic distribution paraphernalia, and two firearms found on the third floor. *Id.* Subsequently, Allister James and Aurelio Rivera were charged and convicted at the state level for narcotics trafficking and illegal firearm possession, respectively. ECF No. 136 at p. 3.

Lab analysis subsequently identified Miguel Rivera's fingerprint on the barrel of the shotgun recovered from the Honda which had been in the garage. ECF No. 139 at 3. It also identified his DNA within a mixture of DNA from the 50-round drum magazine which contained approximately 24 rounds of ammunition, and also on one of the magazines. *Id.* Following lab analysis identifying Miguel Rivera's DNA and fingerprints on some of

the items seized, a federal grand jury indicted him for Unlawful Possession of a Firearm and Ammunition by a Felon, in violation of 18 U.S.C. § 922(g), noting that he had been on release for pending federal charges at that time.  *See* ECF Nos. 1, 79, 90.  However, Mr. Rivera was not charged with any drug crimes related to this alleged conduct.  *See, e.g.*, ECF No. 90.

Jury selection is scheduled for November 20, 2025.  ECF No. 151.

## II.  **LEGAL STANDARD**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and prohibits the issuance of warrants without "probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.

To state a claim under the Fourth Amendment, a defendant must have standing. *See Terrence Byrd v. United States*, 584 U.S. 395, 410 (U.S. 2018) ("a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search"); *see also Alderman v. United States*, 394 U.S. 165, 174 (1969) ("Fourth Amendment rights are personal rights which … may not be vicariously asserted").

After successfully asserting standing, a defendant must prove that the search was unreasonable. U.S. Const. amend. IV; *see also Riley v. California*, 573 U.S. 373, 382 (2014) ("the ultimate touchstone of the Fourth Amendment is reasonableness") (citation modified).  "[R]easonableness generally requires the obtaining of a judicial warrant." *Id.*

3

(quoting *Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 653 (1995)). And judicial warrants require "probable cause, supported by Oath or affirmation…" U.S. Const. amend. IV. In determining whether probable cause exists to issue a warrant, a judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Falso*, 544 F.3d 110, 117 (2d Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Notably, "[p]robable cause 'is not a high bar.'" *District of Columbia v. Wesby*, 583 U. S. 48 (2018) (quoting *Kaley v. United States*, 571 U. S. 320, 338 (2014)). And a judge's probable cause finding is entitled to substantial deference. *United States v. Ventresca*, 380 U.S. 102, 109 (1965); *accord United States v. Zucco*, 694 F.2d 44, 46 (2d Cir. 1982). Accordingly, searches conducted pursuant to a warrant are presumptively reasonable. *United States v. Lauria*, 70 F.4th 106, 120 (2d Cir. 2023).

"Nevertheless, where the presumption [of reasonableness] is overcome, even evidence obtained pursuant to a warrant can be suppressed." *United States v. Lauria*, 70 F.4th 106, 120 (2d Cir. 2023). So, where "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978); *accord Lauria*, 70 F.4th 106, 124-125. Evidentiary hearings are not required, however, when the "material that is the subject of the alleged falsity or reckless disregard is set to one side, [and] there remains sufficient content in the warrant to support

4

a finding of probable cause." *Franks,* 438 U.S. at 171–72 (1978); *see also* 2 Wayne R. Lafave, Search and Seizure: a Treatise on the Fourth Amendment § 4.4(c) (6th ed. 2022) (explaining that the "*Franks* approach ... obviates the need for any hearing at all except in those cases in which the allegedly false statement would undo the probable cause finding").

Even after asserting standing and proving a violation of the Fourth Amendment, however, a defendant also must prove that an exception to the exclusionary rule does not apply since the "identification of [a] Fourth Amendment error does not automatically entitle a defendant to the suppression of evidence." *United States v. Felder*, 993 F.3d 57, 75 (2d Cir. 2021); *see also United States v. Clark*, 638 F.3d 89, 99 (2d. Cir. 2011). Whereas the Fourth Amendment itself "'contains no provision expressly precluding the use of evidence obtained in violation of its commands,'" the Supreme Court of the United States has "establish[ed] an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Lauria*, 70 F.4th 106, 120 (quoting *Herring v. United States*, 555 U.S. 135, 139 (2009)). The exclusionary rule exacts "substantial social costs" on the judicial system because "[i]t almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence." *Id.* (quoting *Davis v. United States*, 564 U.S. 229, 237 (2011)). Therefore, the exclusionary rule is a "last resort" not a "first impulse" when analyzing Fourth Amendment violations, *Clark*, 638 F.3d 89, 99 (2d. Cir. 2011) (quoting *Herring v. United States,* 555 U.S. 135, 139 (2009) (citation modified)), and should only apply when "the deterrence benefits of suppression ... outweigh its heavy costs." *Lauria*, 70 F.4th 106, 121 (quoting *Herring v. United States*, 555 U.S. 135, 139 (2009)).

5

There is an exception to the exclusionary rule for "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984).  When articulating this rule, the Supreme Court reasoned that "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* at 921.  And while the government bears the burden of showing "the objective reasonableness of the officers' good faith reliance on an invalidated warrant," the United States Court of Appeals for the Second Circuit noted that "the Supreme Court strongly signaled, [in *Leon*,] that most searches conducted pursuant to a warrant would likely fall within its protection." *Clark*, 638 F.3d at 100.  As a result, there are only four circumstances in which the good faith exception does not apply, and each exception is weighed against a "presumption of reasonableness." *Id.* (citation modified). Those exceptions are: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Moore,* 968 F.2d 216, 222 (2d Cir. 1992) (citing *Leon,* 468 U.S. at 923).

III. **DISCUSSION**

The court denies Mr. Rivera's motion to suppress because it is untimely and because the search was reasonable.  The court also declines to hold an evidentiary hearing regarding the destruction of pole camera footage because its deletion did not mislead the judge who was presented with probable cause to approve the search.

6

### A. Untimely Filed Motions

Mr. Rivera's motion to suppress is untimely. Substantive motions were due on April 25, 2024, in advance of jury selection then scheduled to take place on July 18, 2024. ECF No. 50. On the deadline for substantive motions, Mr. Rivera filed an "Omnibus Motion to Dismiss, to Suppress, or for Alternative Relief." *See* ECF Nos. 52; *see also* ECF No. 53. Then in June of 2024, he filed a consent motion to continue jury selection until November or December of 2024. *See* ECF No. 61. The court granted the motion and continued jury selection to December 19, 2024, but did not alter the April 25, 2024, substantive motions deadline. ECF No. 62. Mr. Rivera then moved to continue the December 2024 jury selection to April of 2025, citing trial conflicts in separate matters. ECF No. 64. The court granted the motion at ECF No. 65. In March, Mr. Rivera filed a speedy trial waiver in which he asked to continue trial to July, *see* ECF No. 70, which the court granted, *see* ECF Nos. 71–72. Again, at ECF No. 131, Mr. Rivera sought to continue trial, and the parties jointly sought a mid-November jury selection date, *see* ECF No. 132, which the court granted at ECF No. 133. However, at no point within those motions to continue trial did Mr. Rivera seek an extension of the dispositive motions deadline nor mention his intent to subsequently file such motions as he did in a matter before another judge. *See* ECF No. 33 of Case No. 3:20-CR-168-JCH (noting the intent "to file a viable Rule 12(b)(6) motion, which will require an evidentiary hearing"); *see also id.* at ECF No. 9 (asking Judge Hall for a continuance of jury selection "and that the motions deadlines be adjusted accordingly").

The court did not *sua sponte* extend the dispositive motions deadline as it had before its expiration—*see* ECF No. 45 (Mar. 12, 2024); *cf.* ECF Nos. 62, 65, 72, 133— and counsel for Mr. Rivera never sought any *nunc pro tunc* extensions of the same.

Indeed, the government represents that it would have opposed Defendant's motion to continue jury selection had counsel requested to file additional substantive motions. *See* ECF No. 139 at 4 n.3.

The court denies Mr. Rivera's motion to suppress pursuant to Federal Rule of Criminal Procedure 12(c)(3)[1] as "the Court need not review a motion to suppress that was untimely filed." *United States v. Sweeney*, 887 F.3d 529, 534 (1st Cir. 2018); *see also United States v. Moore*, 541 Fed. Appx. 37, 39 (2d Cir. 2013) (summary order) (finding the defendant failed to establish abuse of discretion by district court in failing to consider untimely motion to suppress).

The United States Court of Appeals for the Second Circuit has held, "If a motion falling within Rule 12(b)(3) is not made before trial (or before such pretrial deadline as may be set by the court for such motions) it is 'untimely.'" *United States v. O'Brien*, 926 F.3d 57, 83 (2d Cir. 2019) (citing Fed. R. Crim. P. 12(c)(3) (2014)). "If the motion is untimely, the court may nonetheless entertain it if the movant shows 'good cause' for his failure to make it prior to the deadline." *Id.* However, a "strategic decision by counsel not to pursue a claim, inadvertence of one's attorney, and an attorney's failure to timely consult with his client are all insufficient to establish 'cause.'" *United States v. Yousef*,

---

[1] Federal Rule of Criminal Procedure 12 was amended in December of 2014. "Though the express reference to "waiver" in Rule 12 was deleted in December of 2014, the amendment did not substantively change the rule. *See* Fed. R. Crim. P. 12 advisory committee's notes to 2014 amendments (stating that "[n]ew paragraph 12(c)(3) retains the existing standard for untimely claims")." *United States v. Walker-Couvertier*, 860 F.3d 1, 9 n.1 (1st Cir. 2017).

8

327 F.3d 56, 125 (2d Cir. 2003) (citation modified), *overruled on other grounds as stated in United States v. Yousef*, 750 F.3d 254, 261 (2d Cir. 2014).

A motion to suppress is a motion that falls within the scope of substantive motions outlined in Fed. R. Crim. P. 12(b)(3). *See* Fed. R. Crim. P. 12(b)(3)(C). And because the court did not alter the deadline to submit substantive motions, the deadline to file the motion to suppress was April 25, 2024, unless the defendant can show good cause. The court finds that the defendant has not shown good cause. Therefore, the court denies Mr. Rivera's motion to suppress. Nevertheless, the motion would fail on its merits.

### B. Fourth Amendment Exclusionary Rule

To state a claim under the Fourth Amendment, a defendant must have standing. *See Terrence Byrd v. United States*, 584 U.S. 395, 410 (U.S. 2018) ("a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search"). The defendant also must prove that the search was unreasonable. *See Riley v. California*, 573 U.S. 373, 382 (2014). And after proving the search was unreasonable, the defendant must prove that an exception to the exclusionary rule does not apply. *See United States v. Clark*, 638 F.3d 89, 99–100 (2d. Cir. 2011). Mr. Rivera has not satisfied any of these requirements.

#### i. Standing

Mr. Rivera does not have standing to allege a Fourth Amendment violation regarding any items seized from the second-floor landing porch, the Honda Civic, or the garage. Mr. Rivera disclaimed possessory interest in each of those areas in an affidavit. *See* ECF No. 115 ¶ 4 ("A second-floor porch abuts the publicly-accessible stairwell. The porch is also publicly-accessible."); ¶ 7 ("Inside the garage is an inoperable red Honda

9

Civic. I did not operate the vehicle as I cannot drive…. I did not otherwise use the vehicle for storage."); ¶ 9 ("Though I possessed a key to the detached garage, one could often enter the garage from the side door that was often left unlocked.").

Although insufficient standing provides an independent basis for the court to dismiss Defendant's Fourth Amendment motion to suppress claim (as does the motion's untimeliness), the court finds that Defendant's claim also fails for additional reasons.

      ii. *Reasonableness*

Searches authorized by warrants are presumptively reasonable. *United States v. Lauria*, 70 F.4th 106, 120 (2d Cir. 2023). To overcome this presumption, Mr. Rivera must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978); *Lauria*, 70 F.4th 106, 124-125. Evidentiary hearings are not required, however, when the "material that is the subject of the alleged falsity or reckless disregard is set to one side, [and] there remains sufficient content in the warrant to support a finding of probable cause." *Franks,* 438 U.S. at 171–72 (1978).

Members of the Statewide Narcotics Task Force of the Connecticut State Police secured search warrant for "156 Coram Avenue, 2nd and 3rd floor in Shelton, Connecticut," ECF No. 139-1 at 13, "including the detached garage associated with the residence," *id.* at 34 (Search Warrant Affidavit); *see also id.* at 37 (Search and Seizure Warrant). They executed the search on June 21, 2022. *Id.* at 39 (Search Warrant Return and Inventory).

Defendant argues that only "scant evidence" ties the places authorized to be searched with the contraband expected to be found therein despite the observed crimes detailed in the search warrant affidavit. The court disagrees.

A lightly redacted version of the search warrant in question is publicly filed at ECF No. 139-1, and it clearly connects a suspect (then thought to be Angel Rivera) to the target locations of the search.

The parties do not dispute that, as it is explained in a CSP report dated 09/13/2022, which is docketed at ECF No. 60-9 in the case over which Judge Hall presided (Case No. 3:20-cr-168-JCH), Miguel Rivera was misidentified as his brother, Angel Rivera, throughout the drug investigation which led to both the case before the undersigned, and the one before Judge Hall. *See also* ECF No. 136 (the instant suppression motion in the present case) at 13.

CSP explained that when they executed the search at 156 Coram Avenue in Shelton, Defendant Miguel Rivera was in the second-floor residence, and he informed the officers that *Angel* Rivera was his biological brother, who lived in Waterbury. *See* Case No. 3:20-cr-168-JCH at ECF No. 60-9 ("Suppl. Rpt."). Police later realized that it was Miguel Rivera who had been observed conducting numerous drug transactions throughout their investigation, but that they had misidentified him in their search warrant application as *Angel* Rivera. This realization was corroborated by a tattoo on Defendant's forearm which contained his initials ("MR") and had been documented by the Connecticut Department of Correction (DOC) in 2009. *Id.* Troopers took an updated picture of Miguel Rivera to their confidential informant (CI), who identified Defendant as the person who had sold narcotics to the CI throughout this investigation.

11

The supplemental report explained that brothers Miguel and Angel Rivera shared "very similar descriptors such as ethnicity, height, weight, eye color, and hair style," and the government alleges at ECF No. 57, p. 25 that they "bear a significant resemblance." In support of this claim, they present a picture of each of them.  ECF No. 57-1 at 2.  The court finds that the brothers in question do look similar to one another, at least insofar as to find the misidentification to amount to no more than mere negligence (a mistake which does not warrant a *Franks* hearing or invalidate the warrant) as it relates to Miguel Rivera, the defendant in the present case.  *See* ECF No. 57 at 24.

Based on this misidentification, a reexamination of the search warrant reveals that at "Buy #4," Miguel Rivera sold suspected crack cocaine to a CI in late September 2021. He drove a gray Acura TSX with Connecticut plates (AX91668), which was a vehicle registered to his girlfriend and cohabitant, Angelic Julian.  *See* ECF No. 139-1 at 21–22. Mr. Rivera left his home at 156 Coram Avenue in the aforementioned vehicle, conducted a hand-to-hand drug sale observed by investigators, and then returned home.  *Id* at 22.

In late June of 2022, Mr. Rivera was seen selling suspected crack cocaine with fentanyl to a CI while using the same vehicle, which he had driven from his home to the location of the prearranged sale.  *Id.* at 30–31 ("Buy #9").

Buy #5 (in early December 2021) involved Mr. Rivera being seen leaving his home in a red Hyundai rented by Angelic Julian and then conducting a prearranged narcotic sale of crack cocaine to a CI before returning home.  *Id.* at 22–24.

Beyond those transactions, many more were conducted using vehicles rented by Angelic Julian.  *See id.* at 16–21 (Buys # 1–3).  And Ms. Julian was the contact person listed under the utility account of 156 Coram Avenue, 2nd Floor.  *Id.* at 25 ¶ 82.

Furthermore, the CI believed Mr. Rivera lived at the 2nd floor residence, *id.* at 28, as his own briefing admits that he did. *See* ECF No. 54 at 1, 8; ECF No. 136 at 3–4, 15.

For the reasons explained throughout the government's brief, all of this supports the warrant which authorized searching the second and third floors of the target residence as well as its detached garage. The totality of the circumstances clearly establishes sufficient probable cause for the issuing court to have believed that criminal evidence or contraband would be found within the particular places to be searched. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983).

Defendant argues that certain investigative "conclusions are too weak to connect Angel to the second floor, and thus the affidavit lacks probable cause for the second-floor apartment." ECF No. 136 at 14. The court finds the opposite to be true. The warrant was not predicated on the *identity* of Angel as the target suspect – it was based upon the criminal conduct which could be tied to the locations to be searched. And correcting *Miguel* as the suspected perpetrator of the illegal narcotic activity which previously was attributed to his brother only *bolsters* support for the search warrant in that Miguel has even *greater* ties to the target locations (where he indeed resided) than did his brother (who lived in another city, as alleged in the warrant itself), *see* ECF No. 139-1 at 21 ¶ 50; *see also United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004) ("A showing of nexus does not require direct evidence and "may be based on 'reasonable inference' from the facts presented based on common sense and experience.") (citation modified)

Again, even Defendant *Miguel* Rivera concedes that he lived at the target address at the time of the search, along with Angelic Julian, his girlfriend who had rented the vehicles utilized in many of the illegal drug transactions alleged in the search warrant.

13

ECF No. 139-1 at ¶¶ 27, 38, 47, 54, 58, 73, 123.  The connection between his alleged crimes and the locations authorized to be searched grows even *stronger* with Miguel in place of Angel as the person identified as having committed those alleged drug crimes.

Just as the corrected identification of Miguel bolsters justification for the search, it dissolves many of defense counsel's arguments challenging the warrant, such as the claims that *Angel* lived at the location, received mail there, checked the mail there, and was seen on the second floor and its porch.  All of these challenges are moot upon *Miguel* conceding his residence at the target location, ECF No. 136 at 14–15, and indeed become damning with *Miguel's* identification for his own criminal conduct.  It is now far from the "thinnest of connections," as argued by counsel, *id.* at 15, which ties *Miguel* to the locations authorized for search.  The government's opposition brief lists a string of established, binding authority on this point.  *See, e.g.,* ECF No. 139 at 15–21 (citing, among other cases, *United States v. Cruz*, 785 F.2d 399 (2d Cir. 1986); *United States v. Fama*, 758 F.2d 834 (2d Cir. 1985); *United States v. Young*, 745 F.2d 733 (2d Cir. 1984)). And, as previously discussed, the warrant specifically authorized the search of locations pertinent to the crime charged against Defendant Miguel Rivera, such as his second-floor apartment (which would include its porch, whether or not he had waived standing to challenge a search thereof), and the detached garage.  *See* ECF No. 139-1 at 13, 34, 37; *see also* ECF No. 115 ¶ 3; *United States v. Arboleda*, 633 F.2d 985, 991 (2d Cir. 1980) (finding no expectation of privacy in a fire escape, should Defendant Rivera be describing a similar structure in his amended declaration within the present case).

As for the search of any vehicle within that garage, Mr. Rivera cannot mount a successful challenge thereof, for a number of reasons.  First, he seems to waive standing

14

by explaining that a vehicle therein was inoperable, and by asserting that he did not operate it and in fact that he would not have been able to for medical reasons. ECF No. 115 at 1 ¶ 7. He further seems to waive standing by asserting that he has "ridden in the vehicle as a passenger and left some papers in the passenger-side glovebox," but that he "did not otherwise use the vehicle for storage." *Id.* at 1–2 ¶¶ 7–8. The vehicle, a red 1993 Honda Del Sol Coupe, belonged to Angelic Julian, ECF No. 139-1 at 7, which suggests (within the context of the investigation) that contraband could be found within it, and prevents Defendant Miguel Rivera from establishing standing to challenge its search (to the extent he did not already waive any such standing in the first place). At any rate, CSP agreed that the vehicle was inoperable, describing it as "obviously in a state of disrepair," such that it likely "had not been moved in an extended period of time, [and was] not road worthy in its present condition of having no head lamps and flat tires." *Id.* And while counsel attempts to suggest that Mr. Rivera enjoyed an "expectation of privacy in the detached garage," generally, ECF No. 136 at 4, it is as if his client sought to clarify his abandonment of any standing therein, by amending an affidavit filed at ECF No. 54-1 to assert that although he "possessed a key to the detached garage, one could often enter the garage from the side door – that was often left unlocked." ECF No. 115 at 2 ¶ 9. Perhaps consistently, "The vehicle was not secured in any way, and all doors and compartments were open," according to CSP. ECF No. 139-1 at 7. In sum, Mr. Rivera disclaimed standing in the vehicle (and could not have asserted it anyway), seemingly disavowed standing in the garage by claiming it was essentially open to all (as was the vehicle), but tried to establish an expectation of privacy in the garage nonetheless, though it was listed among the specific areas authorized for search by the state-issued warrant.

It would seem that if Mr. Rivera were throwing this handful of claims at a wishing well, not even gravity itself could successfully guide any of them to their target.

The search was reasonable, and it was presumed to be so by virtue of the warrant which authorized it upon well-supported assertions. The search was made even more reasonable than it was when the warrant was signed, due to the subsequent identification of Defendant Miguel Rivera, and by his own affidavits as docketed by his counsel.

Having found that the search was reasonable, the court acknowledges that suppression still can be appropriate when the judge who signed the warrant "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *United States v. Leon*, 468 U.S. 897, 923 (1984). Whereas evidence might not have to be suppressed when officers execute a search while acting in "good faith" upon the strength of a warrant later deemed defective, that good faith exception does not always apply. The court now examines its applicability.

### iii. Good Faith Exception to the Exclusionary Rule

There are only four circumstances in which the good faith exception does not apply: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Moore,* 968 F.2d 216, 222 (2d Cir. 1992) (citing *Leon,* 468 U.S. at 923).

None of these exceptions applies in this case.

Without record citation in his motion, Defendant claims that pole camera footage was "intentionally deleted" by Officer Kevin Miceli, ECF No. 136 at 13, without then

claiming that this amounted to knowingly misleading the judge to whom the search warrant was presented. A few pages later, Defendant criticizes the affiants because they "failed to provide exhibits" along with the search warrant so that the reviewing judge "could assess the identification of Angel Rivera" (presumably in contrast to images of Miguel, while also presuming some basis for the court to have accurately assessed the identity of each of the two brothers). *Id.* at 16.

In the experience of the undersigned, it is not uncommon for search warrants to be presented without such exhibits as video from pole cameras or audio from wiretaps (though they might well contain screenshots or still images from such video or transcripts from such wiretapped recordings), and the court does not now find that failure to do so amounts to misleading the court nor any other basis to invalidate the warrant nor to suppress the fruits of a search executed upon its issuance. But setting aside whether search warrants need to include video in a case such as this one, on the next page of Defendant's motion, he ironically cites to "Exhibit C," an exhibit he did not attach. *See id.* at 17; *see also id.* at 15. To the extent he intends to refer to an exhibit at ECF No. 99-1 (relating to screenshots provided by the government during the exchange of discovery), Defendant is unclear. Nevertheless, even that exhibit does not justify suppression.

Defendant *then* calls the deletion of pole camera footage the "reckless choice" of Officer Miceli, which counsel quotes as being attributed to investigative uncertainty and a lack of storage space, but again, he provides no record citation for the provided quotes. ECF No. 136 at 18. He also calls this deletion "at minimum, gross negligence." *Id.* And while he refers to the general "sloppiness of the investigation," *id.* at 19, he never alleges that the affiants purposefully misled the judge who reviewed the warrant, nor does he

17

persuasively argue that deletion of the police camera video *after* presentation of the search warrant negates the validity of the warrant, particularly when substantial other evidence supported its issuance.

Finally, and seemingly without explanation, Defendant concludes a portion of his argument by asserting that "the *government* acted in bad faith," *id.* at 17, perhaps (if the court derives context from page 16) referring to the *state* prosecutor's submission of the search warrant to a *state* judge with what Defendant claims to be insufficient independent corroboration of its allegations. However, the warrant certainly contains the observations of affiants which extend beyond the claims of the confidential informants and also beyond the video which no longer exists.

In all, none of what Defendant presents amounts to a basis for a *Franks* hearing, as the search warrant clearly was supported by probable cause, and as the court has been presented with no basis to find that the good faith exception to the exclusionary rule should apply.

Even looking beyond the instant motion, at page 2 of his omnibus motion at ECF No. 54, Mr. Rivera asserts that "investigators prematurely destroyed pole camera footage" related to this investigation, and then represents (without support, record citation, or any justification) that such footage "was exculpatory evidence." But, merely saying it does not make it so. Thus, this argument is rejected out of hand without need for a *Franks* hearing, as there is no reasonable basis to conclude that the deleted footage was exculpatory.

Whereas Defendant suggests that the reviewing judge was presented with "misleading" information in the warrant, *id.*, the court strongly disagrees. The warrant was based on confidential informant tips and debriefing, pole camera footage, and the

investigator observations which supplemented them. And whereas the investigators later updated the record (and the government immediately shared such supplemental report with the defense) in identifying Miguel as the target suspect while absolving Angel, *see* Suppl. Rpt., the court finds that this clarification *bolsters* the credibility of the affiants rather than rendering them and their information generally untrustworthy, as defense counsel suggests. *See* ECF No. 54 at 13. The court finds that the initial misidentification of Miguel as Angel was not intentional, and that it did not in itself cause the search warrant to be signed. It was Miguel's alleged *conduct*, along with other factors tying the alleged criminal activity to the target locations, which established probable cause for the search.

Depending on any future rulings issued by the undersigned (to include rulings on any motions yet to be filed by defense counsel), the witnesses at trial presumably will be able to testify as to their observations, including those observations made in person and while viewing pole camera or other surveillance video, and those witnesses will be subjected to cross-examination within any limits set by the court. Just as was true in the times before affordable, high-quality video and audio surveillance systems (now in common use by law enforcement, private individuals, and businesses), the jurors at this trial will be able to assess the credibility of testimony offered by any confidential informant, any law enforcement officer, or any other witness. Credibility of these witnesses, *see* ECF No. 136 at 16, remains the province of the jury and does not present a justification for suppression in this case, as might otherwise occur when a court finds that the judge who reviewed a search warrant intentionally had been misled. The court does not find that to have been the case in this instance, and for all of the reasons discussed herein, the motion to suppress is denied and there is no need for a *Franks* hearing.

## IV. CONCLUSION

Accordingly, it is thereupon **ORDERED AND ADJUDGED** that the motion to suppress is denied.

**IT IS SO ORDERED** in Hartford, Connecticut, this 12th day of November, 2025.

_/s/_
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE
